Gilbert, J.
In this case a gentleman of the name of Marshall, on the 20th of Fovember, 1865, made a general assignment of his property for the benefit of his creditors to Mr, I)e Camp, who is the 'defendant in this action; and seven or eight days afterward a schedule was prepared and attached to the assignment and filed, pursuant to the act of 1860, and subsequently the county judge directed a bond to be executed in conformity with the statute, in the sum of $12,000.
On the trial of the action before me yesterday, it appeared that, under the advice of the counsel who prepared the assignment and schedule, the assignor was induced to withhold from the schedule about $15,000 of his effects, so as to enable the assignee to give the requisite security; the whole amount of the property assigned being $30,000. And it appeared also. *374 that among the trusts 'was a direction to pay one creditor a little over $2,000, when, in point of fact, the actual indebtedness to such creditor was $1,400. There are other minor objections to the legality of the proceeding, not material to notice.
The plaintiff here, Mr. De Camp, having been appointed receiver on supplementary proceedings, obtained the authority of the court to sue, and brought an action to set aside this assignment, on the ground that it was made with intent to defraud creditors.
I have looked into the case carefully, and have come to the conclusion that where an assignment is made, and there is not a substantial and full compliance with the statute of 1860, that the courts are bound, as a matter of law, to conclude that the assignment was made with intent to defraud creditors. The statute is evidently a remedial one. It was enacted, for the .purpose of preventing abuses which had grown up under the. former system. Before, assignees were not only permitted to select their own trustees, but to prepare the schedules and turn over the property at their convenience, and not unfrequently they, in effect, made provisions for themselves by fraudulent exaggeration of the amount for which they preferred some friendly creditor. It is a matter of history, knoxvn to every lawyer, that these assignments were very frequently, and indeed very commonly, resorted to as a means of forcing a compulsory compromise with creditors, and not intended as a tona fide creation of trust. The opportunities for these secret frauds were numerous, and creditors had no means of detecting them. This statute was intended to require the assignors to act in entire good faith, first, in making out the schedule, and secondly, in turning over the property, that eestuis que trust under an assignment are also to be protected b-y adequate security to be given by the assignee- for the due execution of his trust. Where, as in this case, a portion of the estate is suppressed for the purpose of diminishing the security, and particularly where direction is given in the assignment to pay a creditor a sum of money greater than is due him' it is certainly the duty of the court to regard the assignment as made with intent to defraud creditors. I do not say that no explanation may be given of acts like those referred to, to rebut actual *375 fraud. But when they clearly appear, and are known to both parties to the assignment before any attempt to impeach it, and no proceedings are taken to have them corrected, the inference of fraud in fact becomes almost irresistible.
Therefore a decree must be entered declaring the assignment fraudulent and void, and the usual reference is ordered to James Maurice, Esq.